**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO. 5:91-CR-50088-01** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **CEDRIC J. SMITH (01)** | **MAGISTRATE JUDGE HORNSBY** |

## RULING

Before the Court is a Motion for Modification of an Imposed Term of Imprisonment, filed pursuant to 18 U.S.C. § 3582(c)(1)(A) by Defendant Cedric J. Smith. [ECF Nos. 300, 317]. Pursuant to his motion, Smith moves the Court to reduce his term of imprisonment to time served. [ECF No. 317 at 1]. The government opposes the motion. [ECF No. 321]. For the reasons that follow, the motion is GRANTED as MODIFIED.

### I.
#### BACKGROUND

Over a four-month period in early 1990, Smith and various accomplices committed a spree of five armed bank robberies, none of which resulted in any injuries. Smith was 28 years old at the time. On February 20, 1992, Smith was charged in a Superseding Indictment with five counts of bank robbery in violation of 18 U.S.C. § 2113(a) and (d) (Counts 1, 3, 5, 7, and 9), and five counts of using a firearm during a crime of violence in violation of 18 U.S.C. § 924(c) (Counts 2, 4, 6, 8, and 10). [ECF No. 1-49]. After a jury trial, Smith was convicted on all counts. [ECF No. 1-140]. On November 12, 1992, the Court sentenced Smith to 108 months imprisonment for the bank robbery charges (Counts 1, 3, 5, 7, and 9). [ECF No. 1-175]. As to the firearm charges, the Court sentenced Smith as follows: Count 2 – 60 months; Count 4 – 240 months; Count 6 – 240 months; Count 8 – 240 months; and Count 10 – 240 months. *Id.* Each of the firearm charges were

ordered to run consecutively to each other and to the bank robbery sentence, thereby resulting in a total sentence of 94 years of imprisonment (*i.e.* 85 years for the firearms and nine years for the bank robberies). *Id.* On July 7, 1993, the United States Court of Appeals for the Fifth Circuit affirmed Smith's conviction and sentence. [ECF No. 1-212]. Smith is now 60 years old. He has another 50 years to serve before his custodial sentence expires.[1] He now asks that his term of imprisonment be modified pursuant to 18 U.S.C. § 3582(c)(1)(A) (frequently referred to as "compassionate release").

## II.
### APPLICABLE LAW

As a general rule, a federal court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One exception to that rule is found in 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act of 2018, which permits courts to modify an imposed term of imprisonment if, *inter alia*, "extraordinary and compelling reasons" exist. *Id.* at § 3582(c)(1)(A)(i). Prior to the First Step Act, courts could reduce a term of imprisonment for "extraordinary and compelling reasons," but *only* if such a motion was brought by the Bureau of Prisons ("BOP"). *United States v. Shkambi*, 993 F.3d 388, 390 (5th Cir. 2021). With the passage of the First Step Act, federal prisoners may now petition courts directly for reduction of their sentences. As amended, the statute now permits a court to reduce a term of imprisonment at the request of a defendant when the following criteria are met: (1) the defendant has either exhausted his administrative remedies, or waited thirty days after filing a request with the Bureau of Prisons before filing his motion with the court; (2) extraordinary and compelling reasons warrant a reduction; (3) a reduction is consistent with applicable policy statements issued by the Sentencing

---

[1] Smith is currently incarcerated at USP Pollack; his projected release date is October 27, 2071. *See* https://www.bop.gov/inmateloc/ (last visited September 22, 2021).

Commission[2]; and (4) the court has considered the factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A).

The First Step Act made an additional change in the law relevant to Smith—namely, the Act made a monumental change to sentencing calculations under 18 U.S.C. § 924(c). The current version of section 924(c) requires five to ten-year mandatory minimum sentences, depending on the circumstances, for using or carrying a firearm "during and in relation to" a drug trafficking crime. For a "second or subsequent conviction," the statute mandates a consecutive 25-year minimum sentence (twenty years at the time of Smith's sentencing). In 1993, the Supreme Court determined that the phrase "second or subsequent conviction" triggered the 25-year minimum sentence even if the first 924(c) conviction was obtained in the same case. *Deal v. United States*, 508 U.S. 129, 132 (1993). Thus, a defendant was subjected to the 25-year enhancement on each additional 924(c) charge, "even though the first conviction [was] part of the same indictment and/or the same course of conduct." *United States v. Charles*, 62 F.3d 395, *5 (5th Cir. 1995) (citing *Deal* at 133 n. 1). For twenty-five years following *Deal*, the courts "stacked" consecutive sentences for gun charges in this manner.[3] The First Step Act ended this practice. Section 403 of the First Step Act—entitled "Clarification of section 924(c)"—revised section 924(c) by providing that the higher penalty for a "second or subsequent count of conviction" is triggered only if the

---

[2] In *United States v. Shkambi*, the Fifth Circuit held that U.S.S.G. § 1B1.13 (the Sentencing Commission's "compassionate-release policy statement") applies only to motions brought by the Director of the Bureau of Prisons, and not to motions filed by prisoners on their own behalf. *Shkambi*, 993 F.3d 388, 388 & 393 (5th Cir. 2021). Consequently, neither § 1B1.13 "nor the commentary to it binds a district court addressing a prisoner's own motion under § 3582." *Id.*

[3] The practice actually appears to have begun in 1987 with the Eleventh Circuit's decision in *United States v. Rawlings*, 821 F.2d 1543 (11th Cir. 1987). Other circuits quickly followed suit. *See United States v. Deal*, 954 F.2d 262, 263 (5th Cir. 1992) (collecting cases), *aff'd*, 508 U.S. 129 (1993). The Fifth Circuit first adopted the Eleventh Circuit's approach in its decision in *United States v. Deal*, issued on February 7, 1992. Nine months after issuance of the Fifth Circuit's decision in *Deal*, Smith was sentenced to five stacked, consecutive sentences. [ECF No. 1-204].

defendant has a prior 924(c) conviction that "has become final." 18 U.S.C. § 924(c)(1)(C); 132 Stat. 5194 at § 403; *see also United States v. McCoy*, 981 F.3d 271, 275 (4th Cir. 2020). Stated differently, "[u]nder § 403 of the First Step Act, . . . the 25-year mandatory minimum is 'reserved for recidivist offenders, and no longer applies to multiple § 924(c) convictions obtained in a single prosecution.'" *McCoy* at 275 (quoting *United States v. Jordan*, 952 F.3d 160, 171 (4th Cir. 2020)). However, the changes to 924(c) were not made retroactive. First Step Act of 2018, Pub. L. No. 115-391, § 403, 132 Stat. 5194 (2018); *see also United States v. Davis*, 139 S.Ct. 2319, 2324 n.1 (2019); *United States v. Ross*, 793 Fed.Appx. 334 (5th Cir. 2020).

### III.
#### ANALYSIS

The government does not dispute that Smith has exhausted his administrative remedies, and therefore the first factor for compassionate release is met. As "extraordinary and compelling reasons" in support of his motion, Smith focuses primarily on the severity of his § 924(c) sentence, imposed under an understanding of § 924(c) that has now been "clarified" and amended by § 403 of the First Step Act, and the disparity of his sentence in comparison to the sentence he would receive if prosecuted today. He additionally relies upon his acceptance of responsibility, his remorse for his crimes, the amount of time he has served in BOP custody, and his rehabilitation during incarceration. [ECF Nos. 317 at 7-10; 300-1 at 18-21; 300-2 at 5]. The government opposes the motion, arguing: (1) a non-retroactive amendment to a statute's penalty provision cannot constitute an "extraordinary and compelling" reason warranting compassionate release[4] [ECF No. 321 at 8-13]; and (2) the 18 U.S.C § 3553(a) factors "weigh heavily against release." *Id.* at 13-15.

---

[4] "[W]hether the nonretroactive sentencing changes to . . . § 924(c) convictions, either alone or in conjunction with any other applicable considerations, constitute extraordinary and compelling reasons for a reduction in sentence" is an open question in the Fifth Circuit. *See United States v. Cooper*, 996 F.3d 283, 289 (5th Cir. 2021).

A. **Whether extraordinary and compelling reasons warrant a modification.**

The government contends that the non-retroactive amendment to the penalty provision of § 924(c) is "neither extraordinary nor compelling." [ECF No. 321 at 11]. In support, the government argues:

> By allowing defendants to file their own motions for compassionate release via 18 U.S.C. § 3582(c)(1)(A), Congress did not intend to alter drastically the scope of appropriate compassionate release considerations to include sentencing inequities based on the First Step Act's change to § 924(c)'s penalty provisions, despite the First Step Act stating elsewhere that those changes are not retroactive. In passing the First Step Act, Congress expressly rejected the notion that defendants already serving sentences based on § 924(c)'s "stacked" penalty provisions should benefit from the First Step Act's changes to the law. In contrast, Congress *did* make other portions of the First Step Act retroactive, further undercutting the notion that, merely by affording defendants the procedural right to petition district courts directly for compassionate release, Congress intended to create a new mechanism for defendants to benefit retroactively from the change to § 924(c).

*Id.* at 11-12 (citations omitted). The Court disagrees with the government's argument on several fronts.

First, the Court finds Congress did intend "to alter drastically the scope of appropriate compassionate release considerations" through passage of the First Step Act. From 1984 to 2018, BOP was the exclusive gatekeeper for compassionate release motions. *See* Pub. L. No. 98-473, 98 Stat. 1837, 1998-1999 (1984) ("Comprehensive Crime Control Act of 1984). But "BOP used this power sparingly, to say the least." *United States v. Brooker*, 976 F.3d 228, 231 (2d Cir. 2020). A 2013 report from the Office of the Inspector General found that, "on average, only 24 incarcerated people per year were released on BOP motion," and concluded that BOP did "not properly manage the compassionate release program." *Id.* (citing U.S. Dep't of Just. Office of the Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program* (2013)).[5] The report further noted that "[o]f the 208 people whose release requests were approved by both a warden and a BOP

---

[5] *Available at* https://oig.justice.gov/reports/2013/e1306.pdf (last visited Oct. 5, 2021).

Regional Director, 13% died awaiting a final decision by the BOP Director". *Id.* "As a result of this report and other criticisms, BOP revamped portions of its compassionate release procedures," but the improvements were slight. *Id.* at 232. "It was against this backdrop that Congress passed the First Step Act." *Id.* at 233; *see also McCoy*, 981 F.3d at 276. The purpose of Section 603(b) is announced in its title – "Increasing the Use and Transparency of Compassionate Release." *McCoy* at 276; *see also Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998) (quoting *Trainmen v. Baltimore & Ohio R. Co.*, 331 U.S. 519, 528–529 (1947)) ("We also note that 'the title of a statute and the heading of a section' are 'tools available for the resolution of a doubt' about the meaning of a statute."); *I.N.S. v. Nat'l Ctr. for Immigrants' Rights, Inc.*, 502 U.S. 183, 189 (1991) ("[W]e have stated that the title of a statute or section can aid in resolving an ambiguity in the legislation's text."). As explained by Senator Cardin, a co-sponsor of the bill, "[T]he bill expands compassionate release under the Second Chance Act and expedites compassionate release applications." 164 Cong. Rec. S7314-02, 2018 WL 6350790 (Dec. 5, 2018); *see also* 164 Cong. Rec. 201, at H10362 (Dec. 20, 2018) (statement of Rep. Nadler) ("The prison reform provisions of this bill also include a number of very positive changes, such as . . . improving application of compassionate release").

Further, the Court disagrees with the government's position that "[i]n passing the First Step Act, Congress expressly rejected the notion that defendants already serving sentences based on § 924(c)'s 'stacked' penalty provisions should benefit from the First Step Act's changes to the law." [ECF No. 321 at 11-12]. Congress could have "expressly rejected" this notion by amending § 3582(c)(1)(A) to provide that any non-retroactive amendments to sentencing penalties cannot constitute "extraordinary and compelling reasons" for a sentence modifications, but it did not.[6]

---

[6] Further, in passing the original compassionate release statute in 1984, Congress explicitly contemplated that changes to sentencing laws may be an appropriate consideration for compassionate release:

However, the Court does agree that by declining to make the amendments to § 924(c) retroactive, Congress declined to relieve *all* defendants of lengthier sentences imposed under the prior interpretation of § 924(c)'s penalty provisions. Had Congress implemented a categorical approach and made the amendment retroactive, the convictions of an entire class of defendants sentenced prior to the First Step Act would have been vacated. There would have been no examination of whether any particular defendant posed a danger to the community, his or her history and characteristics, or any of the other individualized factors courts must consider for compassionate release. *See* 18 U.S.S.C. § 3582(c)(1)(A) (requiring courts to consider the 18 U.S.C. § 3553(a) factors). Yet, at the time Congress declined to make the amendments to 924(c) retroactive, it was aware the compassionate release statute mandates an individualized inquiry of the 3553(a) factors prior to granting compassionate release. Thus, the Court finds the fact that Congress did not give § 924(c) retroactive effect does not lead to the conclusion that Congress intended to prohibit courts from providing relief to *some* defendants on an *individual* basis. As discussed by the Fourth Circuit:

> [T]here is a significant difference between automatic vacatur and resentencing of an entire class of sentences – with its avalanche of applications and inevitable resentencings – and allowing for the provision of individual relief in the most grievous cases. Indeed, the very purpose of § 3582(c)(1)(A) is to provide a safety valve that allows for sentence reductions when there is *not* a specific statute that already affords relief but extraordinary and compelling reasons nevertheless justify

---

The Committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances. These would include cases of severe illness, cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence, and some cases in which the sentencing guidelines for the offense of which the defender was convicted have been later amended to provide a shorter term of imprisonment.

S. Rep. 98-225, 55-56, 1984 U.S.C.C.A.N. 3182, 3238-39 (Aug. 4, 1983). The Court has seen no indication in the legislative history of the First Step Act that Congress' position on this topic has changed. Indeed, it appears to the undersigned, for the reasons discussed in this section of its Ruling, that the First Step Act was passed, in part, to strengthen Congress's original intentions with regard to compassionate release.

> a reduction. . . . [W]e see nothing inconsistent about Congress's paired First Step Act judgments: that not *all* defendants convicted under § 924(c) should receive new sentences, but that the courts should be empowered to relieve *some* defendants of those sentences on a case-by-case basis.

*McCoy* at 286–87 (internal citations and quotation marks omitted). Section 3582(c)(1)(A)(i) authorizes courts to reduce a sentence "in any case" presenting "extraordinary and compelling reasons" warranting a reduction—not any case "except those involving stacked sentences under § 924(c)." And because one of the original, expressed purposes of § 3582(c)(1) was to empower judges to reduce "unusually long sentence[s]," *see* n.6 *supra*, it would indeed be odd that Congress would then require courts to ignore its "clarification" that stacked § 924(c) sentences were not its original intent *and* to ignore its determination that such sentences are so unusually long that they are no longer to be mandatorily imposed.

Putting Smith's sentence in context, as of this writing, Smith has served a little more than thirty years of the eighty-five year sentence imposed for his § 924(c) offenses. A defendant sentenced today for the same number of § 924(c) offenses as Smith could be released more than three decades before Smith. Thus, not only would such a defendant receive a sentence that was sixty years less than Smith, he would enter federal prison three decades after Smith and would be released three decades sooner. Such a disparity is extraordinary. It is also contrary to the congressional directive that courts must strive "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C.A. § 3553(a)(6). The extraordinary length of Smith's sentence is further illuminated when one considers that in fiscal year 2020, the average sentence for murder for federal defendants with a criminal history category of III was 300 months; the median sentence was 240 months.[7] The average

---

[7] *See* U.S. Sentencing Comm'n Interactive Data Analyzer, available at https://ida.ussc.gov/analytics/saw.dll?Dashboard (last visited Oct. 1, 2021).

sentence for murder in 2020 for defendants with a criminal history category of II was 230 months[8]; the median sentence was 180 months.[9] Smith's total sentence is 1,128 months; his sentence for solely his § 924(c) convictions is 1,020 months. Congress could hardly have intended such a result.[10] Surely the government does not contend that a series of armed robberies in which no person was physically harmed warrants a sentence approximately five times longer than those imposed for murder. For all of these reasons, the undersigned finds that the disparity in sentences resulting from the First Step Act's amendment of the penalty provision of 18 U.S.C. § 924(c) can constitute an "extraordinary and compelling" reason for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) in the appropriate case. Once Smith's age and the three decades of imprisonment he has already served are accounted for, the Court finds this case in particular clearly provides extraordinary and compelling reasons warranting a sentence reduction.

**B.    18 U.S.C. § 3553(a) Factors and Policy Statements of the Sentencing Commission.**

Smith asserts that the § 3553(a) factors support a reduction of his sentence, primarily relying upon his acceptance of responsibility, his remorse for his crimes, the amount of time he has served in BOP custody, and his rehabilitation during incarceration. [ECF Nos. 317 at 7-10; 300-1 at 18-21; 300-2 at 5]. The government contends the "§ 3553(a) factors weigh against a reduction in sentence." [ECF No. 321 at 13]. While the government acknowledges Smith has accepted responsibility for his criminal conduct and has learned various skills in prison, it argues

---

[8] If Smith were sentenced under the current Sentencing Guidelines, he would have 3 criminal history points, rather than 5, resulting in a Criminal History Category of II, rather than III. *See* PSR at 16, ¶ 130 (imposing 2 criminal history points pursuant to USSG 4A1.1(e), which has been repealed).
[9] *See* n.7, *supra.*
[10] And by entitling § 403 of the First Step Act "Clarification of section 924(c) of title 18, United States Code," it would seem Congress has indicated that it never intended for § 924(c) sentences to be stacked when charged in one indictment.

the nature of his offense, his criminal history, and his disciplinary record in BOP militate against early release. *Id.* at 13-15.

As to the nature and circumstances of the offense, Smith and his accomplices committed five bank robberies in and around Shreveport, Louisiana, between January 24 and June 1, 1990. In each of the robberies, Smith and his accomplices were armed. In one of the robberies, one of the perpetrators fired a shot into a cash drawer but did not gain entry into the drawer. [PSR at 7, ¶ 29]. In the course of that particular robbery, a customer of the bank pursued Smith and his two accomplices in his pickup truck. *Id.* at ¶ 30. During the ensuing chase, one of the perpetrators fired several shots at the pickup truck. *Id.* Eventually, the perpetrators stopped their vehicle, and they all exited the getaway car and fired several shots in the direction of the bank customer's truck. *Id.* They then drove away and the customer discontinued his pursuit. *Id.* While no one was physically injured during this incident or any of the other robberies, these were undoubtedly traumatic events for all the victims involved.

With regard to Smith's criminal history, he was incarcerated for approximately two years as a juvenile, and he has been incarcerated during the majority of his adult life.[11] *Id.* at 19, ¶ 152. At eighteen, Smith was arrested for armed robbery and spent approximately ten years in the custody of the Louisiana Department of Corrections. *Id.* at 16, ¶ 129. He was released from state custody on November 9, 1989, and within about three months, he committed the first robbery for which he is now incarcerated. Clearly, the nature of Smith's offenses and his criminal history are troubling. However, the Court must take a more holistic view and will not base its decision solely upon his criminal conduct from more than three decades ago.

---

[11] Smith's juvenile convictions were for felony theft, simple battery and attempted theft, and possession of marijuana. [PSR at 15-16, ¶¶ 126-128].

Smith was born to a teenage mother who had three children between the ages of fifteen and seventeen. *Id.* at 19, ¶ 150. Smith had very little contact with his father while growing up.[12] *Id.* at 151. He was raised primarily by his maternal grandparents, although he remained close to his mother throughout her life. *Id.*; *see also* ECF No. 300-1 at 19. Smith has never been married, but he has a daughter with whom he remains close. [ECF Nos. 300-1 at 20-21; 300-2 at 5; 320-2]. He now has several grandchildren with whom he remains in frequent contact. *See e.g.* ECF Nos. 320-2; 320-5]. Smith's mother died during his incarceration, and this event appears to have had a profound impact in his thinking and personal growth. [ECF No. 200-1 at 18-20]. He has positively impacted the lives of several of his co-inmates. *See e.g.* ECF No. 320-7. Many members of Smith's family and the community have advised the Court that they intend to support Smith if released. *See e.g.* ECF Nos. 313, 320-1, 320-3, 320-4.

As to the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, the Court finds these considerations warrant early release. While Smith's criminal conduct was undoubtedly serious, Smith has spent well over thirty years in prison for this conduct. [PSR at 17, ¶ 133]. Were Smith sentenced today, his statutory minimum sentence for the § 924(c) offenses would be twenty-five years. Assuming he received the same 108-month sentence for the robbery charges, Smith's total sentence would be 408 months (*i.e.* 34 years), rather than 94 years. The Court finds a sentence of 94 years far exceeds that which is necessary to achieve the ends of justice. It further finds that maintaining such a sentence would be disproportionate to the seriousness of the offense, as well as disproportionate to what Congress now deems an appropriate sentence for similar conduct. Maintaining a 94-year sentence for Smith's offense conduct in light of the current version of §

---

[12] Smith appears to have reconnected with his father while in BOP custody. [ECF Nos. 300-2 at 5; 320-6].

924(c) does not promote respect for the law. Rather, it leads the public to the conclusion that the criminal justice system treats similarly situated people unfairly.[13] The Court additionally finds a reduced sentence affords adequate deterrence to criminal conduct, while also protecting the public from further crimes of Smith. While Smith's BOP disciplinary history is somewhat problematic, his last infraction was over four years ago. [ECF No. 322; *see also* ECF No. 324 at 3]. Smith is now 60 years old. Statistically, offenders age 60 and older have a recidivism rate of 18.2% with a category II criminal history and a 28.1% recidivism rate at category III. U.S. Sent'g Comm'n, *Recidivism of Federal Offenders Released in 2010* at 30 (2021). Smith additionally has something that many do not after three decades of incarceration—a strong family and community support system. Finally, the Court additionally has reviewed all applicable policy statements issued by the Sentencing Commission and finds none warrant the denial of relief.

## IV.
### CONCLUSION

After consideration of the § 3553(a) factors, including the history and characteristics of this Defendant, the need to afford adequate deterrence to criminal conduct and to promote respect for the law, the parties' arguments, and Congress's intent in passage of the First Step Act, the Court determines that a reduction of Smith's sentence of imprisonment to thirty-four (34) years, is sufficient but not greater than necessary to comply with the purposes of sentencing. Such a sentence is a substantial prison term, commensurate with the crimes Smith committed. Accordingly,

---

[13] This disparity is further compounded when one considers the disproportional rate in which Black offenders have historically been subjected to multiple 924(c) charges when compared to offenders of other races who are eligible for such charges. *See e.g.* U.S. Sent'g Comm'n, *Fifteen Years of Guideline Sentencing* at 90-91 (2004); U.S. Sent'g Comm'n, *Report to Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System* at 274 (2011); U.S. Sent'g Comm'n, *Mandatory Minimum Penalties for Firearms Offenses in the Federal Criminal Justice System* at 6 (2018).

IT IS HEREBY ORDERED that the Motion for Sentence Modification [ECF Nos. 300, 317] is GRANTED, and the Court will issue an amended judgment reducing Defendant's term of incarceration to thirty-four (34) years, effective December 3, 2021.

IT IS FURTHER ORDERED that the following special condition is added to Smith's conditions of supervised release:

> Immediately upon release from the custody of the Bureau of Prisons, Defendant must reside at the City of Faith Halfway House in Monroe, Louisiana for a period of six (6) months, and he shall observe the rules of the facility and contribute toward the cost of room and board as directed by staff of the facility.

Except as modified above, all other provisions of the Judgment imposed on November 12, 1992 [ECF No. 1-175] REMAIN in effect.

SIGNED this 5th day of October, 2021.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE